## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CYNTHIA DAWN JACKSON,　　　　　　Case No. 1:19-cv-917
　　　　Plaintiff,　　　　　　　　　　　Dlott, J.
　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.

　　　　　vs.

COMMISSIONER OF　　　　　　　　**REPORT AND**
SOCIAL SECURITY,　　　　　　　　　**RECOMMENDATION**
　　　　Defendant.

　　　　Plaintiff Cynthia Dawn Jackson brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and

supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 13) and the Commissioner's response in opposition (Doc. 19).

## I. Procedural Background

　　　　Plaintiff filed applications for DIB and SSI in October 2014, alleging disability since

April 19, 2011. The alleged onset date was subsequently amended to June 13, 2013. Plaintiff

alleges disability based on injuries sustained in a 2011 automobile accident, including a right

femur fracture, left pilon fracture, left talus lateral process fracture, right subtrochanteric femur

fracture, and left clavicle fracture; back pain; and trouble with comprehension. Plaintiff, through

counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ)

Joseph A. Rose. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ video

hearing on June 22, 2017. On September 18, 2017, the ALJ issued a decision denying plaintiff's

DIB and SSI applications. On April 16, 2018, the Appeals Council granted the request for

review and remanded the matter back to an ALJ. A subsequent hearing was held on September 28, 2018 before ALJ Christopher S. Tindale. ALJ Tindale issued a decision denying plaintiff's DIB and SSI applications on November 26, 2018. This became the final decision of the Commissioner when the Appeals Council denied review on October 15, 2019.

Plaintiff had previously filed applications for DIB and SSI in April 2011, alleging disability since April 19, 2011. ALJ John M. Prince issued a decision denying plaintiff's prior applications on June 12, 2013 (Tr. 97-110), which became final when the Appeals Council denied plaintiff's request for review on September 17, 2014. Plaintiff filed an action in this Court appealing the denial of her claim for disability benefits. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:14-cv-0873. This Court affirmed the administrative decision, and no further appeal was taken.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

If a social security claimant has filed a prior application, res judicata may apply to the administrative proceedings.  *Earley v. Commr. of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (citing *Drummond v. Commr. of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)).  *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a

hearing shall be binding on all individuals who were parties to such a hearing."). *Drummond* held that "absent changed circumstances," the findings made by an ALJ as part of a prior disability determination are binding on a subsequent ALJ in later proceedings. 126 F.3d at 842. Following the decision in *Drummond*, the Commissioner issued AR 98-4(6), 1998 WL 283902 (June 1, 1998), which binds ALJs in states within the Sixth Circuit and requires them to follow *Drummond*. The Acquiescence Ruling explains:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . .

*Id*., at *3.

In June 2018, the Sixth Circuit clarified its decision in *Drummond* and the ways in which the decision seeks to protect principles of "consistency between proceedings and finality with respect to resolved applications." *Earley*, 893 F.3d at 931. The Sixth Circuit explained that when a claimant who has filed a prior application files "a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application." *Earley*, 893 F.3d 933. But the Court also explained that "an individual may file a second application - for a new period of time - for all manner of reasons," and res judicata would not apply to the second application. *Id*. When a claimant seeks disability benefits for a distinct time period, she can "obtain independent review" of the application so long as she "presents evidence of a change in condition or satisfies a new regulatory threshold." *Id*. at 932. Principles of consistency and finality "do not prevent

the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability," while bearing in mind the record and findings in the prior proceedings.[1] *Id*. at 931.

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the insured status requirements of the Social Security Act through June 30, 2018, but not thereafter.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since June 13, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: Disorder of the spine, residuals from fractures, carpal tunnel syndrome status post release, obesity, mood disorder, anxiety disorder, posttraumatic stress disorder (PTSD), personality disorder, and obsessive-compulsive disorder (OCD) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, [the ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows: She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds;

---

[1] ALJ Tindale applied principles of res judicata and reviewed the record in accordance with the Sixth Circuit's decision in *Drummond*, 126 F.3d 837, and AR 98-4(6) and *Dennard v. Sec'y of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990), and AR 98-3(6). He found that ALJ Prince's findings of fact and determination of plaintiff's RFC were "controlling in subsequent, unadjudicated periods, unless there is new and material evidence or a showing of 'changed circumstances.'" (Tr. 21). ALJ Tindale found that "a departure from the residual functional capacity established in that prior decision is warranted for the period beginning after June 12, 2013, the date the decision was issued." (Tr. 21-22). However, because the prior decision was "final," ALJ Tindale declined to adjudicate "matters that occurred prior to June 12, 2013, based upon the legal doctrine of res judicata." (Tr. 22). Plaintiff does not allege that ALJ Tindale erred in applying principles of res judicata when evaluating plaintiff's DIB and SSI claims for the unadjudicated period.

she can occasionally stoop, kneel, crouch, crawl; she can occasionally reach overhead; she cannot work at jobs that require commercial driving; she must avoid all exposure to dangerous hazards such as unprotected heights and dangerous moving machinery; and she can frequently handle and finger with the left hand. She is limited to simple, routine tasks in a work environment free of fast production rate or pace work. She can maintain attention and concentration for 2-hour periods and then would need a short 5 to 10 minute break. She can have occasional contact with the public and supervisors, and only occasional and superficial contact with co-workers, with superficial contact defined as no tandem tasks, no arbitration, and no conflict resolution. She is limited to jobs with only occasional changes in the work setting and only occasional decision making.

6. The [plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).

7. The [plaintiff] was born on September 5, 1980 and was 32 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 13, 2013, through the date of th[e] [ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24-41).

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of approximately 92,000 unskilled, sedentary jobs in the national economy such as addresser (61,000 jobs), document preparer (21,000 jobs), and printed circuit board screener (10,000 jobs). (Tr. 41, 70-71).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

On appeal, plaintiff alleges that the ALJ erred by: 1) failing to develop the record (Doc.

13 at PAGEID 4, ¶ 6); (2) improperly weighing the opinions of every treating source, and

specifically plaintiff's primary care physician Dr. Sabir Quraishi, M.D. (*Id*. at PAGEID 4-5, ¶ 7;

*Id*. at PAGEID 6-7, ¶ 9); (3) failing to consider the medical records and the opinion of

consultative examining psychologist Joseph M. Carver, Ph.D., and the "determination" of the

Opportunities for Ohioans with Disabilities (OOD), formerly the Ohio Bureau of Vocational

Rehabilitation (*Id*. at PAGEID 4, 6, ¶¶ 7, 9); (4) substituting his own lay opinion of plaintiff's

functional limitations for the opinions of the medical sources of record, including the mental

health opinions of plaintiffs' treating providers, the opinions of "the 2018 O[O]D examiners,"

and the opinion of one-time consultative examining psychologist Dr. Brian Griffiths, Psy.D. (*Id*.

at PAGEID 5, ¶ 8; (5) improperly evaluating plaintiff's subjective complaints, including by

failing to find that her chronic and migraine headaches are a "severe condition" (*Id*. at PAGEID

7-8, ¶ 10); and (6) relying on VE testimony that did not accurately portray plaintiff's physical

and mental impairments to find that plaintiff could perform a significant number of jobs in the

national economy (*Id*. at PAGEID 8, ¶ 11).[3]

### 1.  The ALJ did not err by failing to develop the record

Plaintiff alleges that the ALJ erred by failing to develop the record in accordance with the

Appeals Council's remand order.  (Doc. 13 at PAGEID 4; *see* Tr. 214-15).  Plaintiff alleges she

requested medical experts through counsel's pre-hearing memorandum and counsel's opening

---

[3] Plaintiff's assignments of error overlap and are not easily discernible.  The Court has construed the
alleged errors as best it is able based on the allegations set forth in the numbered paragraphs of the Statement of
Errors.

statement at the ALJ hearing. (*Id.*, citing Tr. 503, 55). Plaintiff alleges that the ALJ failed to obtain "consultative examinations and additional medical source statements about what [plaintiff] could do despite her limitations[.]" (Doc. 13 at PAGEID 4, citing Tr. 214-15). Plaintiff alleges that the ALJ gave only "some weight" to the "May 2015 State agency psychological consultant (Tr. 36)[4] based on a limited record consisting primarily on [sic] the one time, February 4, 2015 psychological consultative examination of" Dr. Griffiths, which the ALJ in turn gave "reduced weight." (Doc. 13 at PAGEID 4, citing Tr. 36, Tr. 553-622).[5] Plaintiff notes that Dr. Griffiths "only reviewed one 19 month old report from Shawnee Mental Health," and he states in his report: "Additional information could result in alternative conclusions." (*Id.* at PAGEID 4). Thus, as best the Court is able to discern, plaintiff alleges that the ALJ erred by failing to obtain medical opinion evidence about plaintiff's functional limitations in accordance with the Appeals Council's remand order and by discounting mental health source opinions which were based on an incomplete medical record. (*Id.* at PAGEID 4, citing Tr. 553-622).

Under the administrative scheme, medical sources render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B)). *See also Ford v. Commr. of Soc. Sec.*, 114 F. App'x 194, 197-98 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ is responsible for assessing a claimant's RFC at the hearing level based on all relevant medical and other evidence. 20 C.F.R.

---

[4] The "May 2015 State agency" assessment plaintiff references is an assessment completed by state agency reviewing psychologist Dr. Kirwin, which the ALJ evaluated at Tr. 38. (Tr. 38, citing Tr. 162-63, 177-78).

[5] Dr. Griffiths' evaluation is found at Tr. 615-21.

§§ 404.1527(d)(2), 416.927(d)(2); §§ 404.1545(a)(3), 416.945(a)(3); §§ 404.1546(c), 416.946(c).

The claimant is generally responsible for providing the evidence that the Commissioner will use

to make a finding about her RFC.  *See* 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1) (generally,

the claimant must prove to the agency that she is disabled, and the claimant has an ongoing duty

to "inform [the agency] about or submit all evidence known to [the claimant] that relates to

whether or not [she is] . . . disabled (see §§ 404.1513, 416.913) . . . [and] to disclose any

additional related evidence about which [the claimant] becomes aware.").  *See also* 20 C.F.R. §§

404.1545(a)(3), 416.945(a)(3) ("In general, [the claimant is] responsible for providing the

evidence [the agency] will use to make a finding about [the claimant's] residual functional

capacity.").  Prior to making a disability determination, the agency is responsible for "developing

[the claimant's] complete medical history, including arranging for a consultative examination(s)

if necessary, and making every reasonable effort to help [the claimant] get medical reports from

[her] own medical sources."  20 C.F.R.§§ 404.1545(a)(3), 416.945(a)(3).

Plaintiff has not shown that the ALJ had a duty to further develop the record related to

her psychological impairments and functioning in order to comply with the Appeals Council's

remand order.  The Appeals Council limited its remand order to further evaluation of plaintiff's

carpal tunnel syndrome.  Following the first ALJ hearing and decision dated September 18,

2017, the Appeals Council vacated the hearing decision and remanded the matter to an ALJ

because it determined that "further evaluation of claimant['s] residual carpal tunnel syndrome is

required."  (Tr. 214).  The Appeals Council directed the ALJ upon remand to further evaluate

plaintiff's severe impairments at Step 2 of the sequential evaluation process and provide his

rationale for the finding as required under AR 98-4(6). (Tr. 214). The Appeals Council directed

the ALJ to "[o]btain additional evidence concerning the claimant's impairment in order to

complete the administrative record in accordance with the regulatory standards regarding

consultative examinations and existing medical evidence (20 CFR 404.1512, 404.1513,

404.1520b, 416.912, 416.913, and 416.920b)," including, if "warranted and available,

consultative examination and medical source statements about what the claimant can still do

despite the impairment." (Tr. 215). The Appeals Council wrote in terms of plaintiff's

"impairment," and specifically "severe residual carpal tunnel syndrome," and did not indicate

that additional examinations and medical evidence were required to complete the record with

respect to any other impairment and functional limitations. Thus, the ALJ did not fail to comply

with the Appeals Council's order on remand by not obtaining additional medical evidence

related to plaintiff's mental impairments and limitations.

Further, plaintiff has not shown that the ALJ failed to comply with applicable Social

Security regulations by not obtaining additional evidence related to her mental impairments and

functioning. In support of her claim, plaintiff alleges she requested medical experts through

counsel prior to the ALJ hearing and at the start of the hearing. (Doc. 13 at PAGEID 4, citing Tr.

503, 55). Counsel submitted the pre-hearing request on September 19, 2018, shortly before the

post-remand ALJ hearing. (Tr. 503). Counsel requested that plaintiff receive a "fully favorable

decision" based on allegedly disabling left C5 radiculopathy and hand/wrist symptoms and

restrictions. (*Id.*). In the alternative, counsel requested a medical expert "for the hearing" or

that the claims be referred back to the state agency for "a consultative evaluation both physical

and mental." *(Id.)*. Counsel noted that since the most recent ALJ decision, "substantial new medical exhibits and vocational limitations from treating sources (Exhibit 18F and 23F) have been submitted with no state agency or other expert review."[6] *(Id)*. Subsequently, at the ALJ hearing, counsel stated that the reason plaintiff had "requested medical expert or review" in the pre-hearing memorandum was "due to the new conditions" since the amended disability onset date of June 12, 2013. (Tr. 55). Plaintiff's Statement of Errors includes no explanation beyond these vague assertions that indicates why further development of the record related to her mental impairments was required following the Appeals Council's remand, including what the additional evidence would have shown. The ALJ did not err by failing to further develop the record related to plaintiff's mental impairments and limitations following the Appeals Council's remand of her claims for further evaluation of her carpal tunnel syndrome.

Finally, plaintiff has not shown that the ALJ committed any error related to the assessments of consultative examining psychologist Dr. Griffiths and non-examining state agency psychologist Dr. Patricia Kirwin, Ph.D. Plaintiff indicates that Dr. Griffiths did not have sufficient evidence before him to render an opinion because he "only reviewed one 19 month old report from Shawnee Mental Health [Center]" and he "plainly indicates that 'Additional information could result in alternative conclusions.'"[7] (Doc. 13 at PAGEID 4, citing Tr. 615). But even assuming Dr. Griffiths' report was incomplete, plaintiff has not explained how this

---

[6] These exhibits are assessments completed by plaintiff's treating mental health providers at Shawnee Family Health Center on April 14, 2017 (Lois D. Prine, QMHS) and on April 5, 2018 (Patty Henderson Schulz, QMHS). (Tr. 758-63, 815-21).

[7] This is a boilerplate statement included in the "Disclosure Statement" at the beginning of Dr. Griffiths' report. (Tr. 615). Its inclusion in the report does not indicate that Dr. Griffiths failed to consider relevant evidence in his evaluation of plaintiff.

caused the ALJ to err. The ALJ did not adopt Dr. Griffiths' assessment wholesale but found the opinion was "vague" and gave it only "some weight." [8] (Tr. 38). The ALJ formulated an RFC that he found largely addressed the concerns suggested by Dr. Griffiths' report, which included the "need to limit the claimant to simple tasks with extra accommodations designed to addresses [sic] reduced stress tolerance, some difficulty with pace, and problems interacting with others." (*Id*.). The ALJ's RFC finding also incorporated numerous additional mental limitations that the ALJ found were not suggested by Dr. Griffiths' report.[9] (Tr. 28). Plaintiff has not shown that the evidence of record supported additional or greater mental restrictions that the ALJ erroneously omitted from the RFC finding. Thus, even assuming Dr. Griffiths rendered his opinion based on an incomplete record, plaintiff has not shown that the ALJ erred on this ground.

Similarly, plaintiff notes that the ALJ gave "some weight" to the non-examining state agency psychologist's assessment, which relied on Dr. Griffiths' assessment. (Doc. 13 at 4; *see* Tr. 38). Plaintiff does not otherwise challenge the ALJ's evaluation of the reviewing psychologist's opinion. The ALJ considered Dr. Kirwin's opinion that plaintiff "retained the mental ability to perform simple, repetitive tasks in a reduced stress work environment with limited social interaction," which the ALJ found to be generally supported by plaintiff's

---

[8] Plaintiff notes that the ALJ gave Dr. Griffiths' evaluation "some weight" and Dr. Kirwin's evaluation "reduced weight," but plaintiff does not allege that the ALJ erred in evaluating these medical sources' opinions under 20 C.F.R. §§ 404.1527, 416.927.

[9] The ALJ found that plaintiff "is limited to simple, routine tasks in a work environment free of fast production rate or pace work. She can maintain attention and concentration for 2-hour periods and then would need a short 5 to 10 minute break. She can have occasional contact with the public and supervisors, and only occasional and superficial contact with co-workers, with superficial contact defined as no tandem tasks, no arbitration, and no conflict resolution. She is limited to jobs with only occasional changes in the work setting and only occasional decision making." (Tr. 28).

"conservative and routine mental treatment history[.]" (Tr. 38, citing Tr. 162-63, 177-78). However, the ALJ gave plaintiff "the benefit of the doubt" and imposed greater restrictions based on the entire record, including plaintiff's testimony and in light of the vague and poorly defined terms Dr. Kirwin used. (*Id*.). Plaintiff has not shown that the evidence of record supported additional or greater mental restrictions that the ALJ erroneously omitted from the RFC finding. Thus, plaintiff has not shown that the ALJ erred based on Dr. Kirwin's allegedly incomplete assessment.

Plaintiff's first assignment of error should be overruled.

### 2. The ALJ did not improperly weigh the treating medical providers' opinions

Plaintiff alleges the ALJ erred by improperly weighing and giving "little weight" to the opinions of every treating source, and specifically to the opinions of plaintiff's primary care physician Dr. Quraishi. (*Id*. at PAGEID 4-5, ¶ 7; *Id*. at PAGEID 6-7, ¶ 9). Plaintiff argues that the ALJ's evaluation of Dr. Quraishi's opinions is not substantially supported because the ALJ did not mention the length of the treatment relationship, the frequency of plaintiff's visits, and the "consistency" of the opinions. (Doc. 13 at PAGEID 6).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's]

14

medical impairment(s) and may bring a unique perspective to the medical evidence that cannot

be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is (1) "well-

supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not

inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th

Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ

must apply the following factors in determining what weight to give the opinion: the length of

the treatment relationship and the frequency of examination, the nature and extent of the

treatment relationship, supportability of the opinion, consistency of the opinion with the record

as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544. *See also*

*Blakley*, 581 F.3d at 408 ("Treating source medical opinions [that are not accorded controlling

weight] are still entitled to deference and must be weighed using all of the factors provided in"

20 C.F.R. § 404.1527(c) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4)[10].

In addition, an ALJ must "give good reasons in [the] notice of determination or decision

for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. §§

404.1527(c)(2), 416.927(c). The ALJ's reasons must be "supported by the evidence in the case

record, and must be sufficiently specific to make clear to any subsequent reviewers the weight

---

[10] Effective March 27, 2017, SSR 96-2p was rescinded when the Social Security Administration published final rules that revised the rules and regulations applicable to the evaluation of medical evidence for claims filed on or after that date. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5844-45, 5869, 5880. *Shields v. Comm'r of Soc. Sec.*, 735 F. App'x 430, 437 n.9 (6th Cir. 2018). Since plaintiff's claim was filed prior to March 27, 2017, SSR 96-2p applies to this case.

the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This

requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of

h[er] case, especially "where a claimant knows that h[er] physician has deemed h[er] disabled,"

and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule."

*Wilson*, 378 F.3d at 544.

Dr. Quraishi issued several assessments of plaintiff's physical impairments and

functioning. (Tr. 795, Tr. 796, Tr. 493, Tr. 952). In May 2014, Dr. Quraishi diagnosed plaintiff

with post-traumatic "DJD" and assessed her with permanent restrictions which limited her to

working no more than 6 hours per day; bending, stooping, kneeling, and crouching 15 times per

day; and lifting no more than ten pounds. (Tr. 795). In October 2016, Dr. Quraishi wrote a note

that plaintiff was "unable to work back to back shifts due to her medical conditions." (Tr. 796).

On November 1, 2017, Dr. Quraishi completed an "Evaluation Form" in which he opined that

plaintiff can stand/walk and sit for 5 minutes total in an 8-hour day; lift 5 pounds occasionally;

never use her hands for simple grasping, pushing/pulling, or fine manipulation; never use her feet

for repetitive movements as in operating foot controls; and occasionally bend, squat, and climb

but never crawl. (Tr. 493). He assessed her as unable to reach above shoulder level. Her

condition was not stable and surgical intervention was possible for carpal tunnel syndrome and

cervical symptoms. Dr. Quraishi noted that plaintiff was "post traumatic MVA [motor vehicle

accident]" in April 2011 which resulted in multiple fractures, and she still had pain and difficulty

with standing, lifting, carrying, and reaching, and anxiety issues. (*Id*.). In October 2018, Dr.

16

Quraishi opined that plaintiff could only occasionally reach, handle, finger, and push/pull with the right hand and the left hand, and she could never feel with either the right hand or the left hand. (Tr. 952).

The ALJ declined to give Dr. Quraishi's assessments and opinions "controlling weight." (Tr. 37-38). The ALJ found that though Dr. Quraishi was a treating source whose opinions were entitled to "special consideration," he assessed "extreme" restrictions which in effect precluded all competitive employment. (Tr. 37). The ALJ found these extreme restrictions were not well-supported by Dr. Quraishi's own treatment records, which documented "generally benign physical findings" and consistently included conservative treatment recommendations. (Tr. 37-38). Further, the ALJ found his opinions were inconsistent with the treatment records of plaintiff's other treating providers and the consultative examining physicians, whose records did not reflect the same degree of dysfunction that Dr. Quraishi found. (*Id*. at 38). The ALJ instead gave Dr. Quraishi's opinions "little weight." (Tr. 37, 38). The ALJ found that several of Dr. Quraishi's opinions were conclusory in nature. (Tr. 38). Further, his opinions were not supported by sufficient objective findings, such as abnormal findings to support severe limitations on use of the right hand and a restriction to five minutes of standing/walking per day; plaintiff's activities of daily living; and plaintiff's history of working part-time since the alleged onset date at a medium exertion level job. (*Id*.).

While the ALJ may not have explicitly addressed each of the six factors under 20 C.F.R. §§ 404.1527(c)(2), 416.927(c) for weighing a treating physician's opinions, the ALJ satisfied the "good reasons" standard. *See Dugan v. Commr. of Soc. Sec.*, 742 F. App'x 897, 904 (6th Cir.

17

2018) (citing *Tilley v. Comm'r of Soc. Sec.*, No. 09-6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) ("indicating that, under *Blakley* and *Wilson*, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision"); *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("[T]he ALJ . . . is [not] required to discuss each piece of data in its opinion, so long as [he] consider[s] the evidence as a whole and reach[es] a reasoned conclusion.")). The ALJ thoroughly considered the evidence as a whole, he gave comprehensive reasons for discounting Dr. Quraishi's opinions, and those reasons are substantially supported by the record.

First, the ALJ reasonably determined that Dr. Quraishi's treatment notes did not support the extreme restrictions he assessed. The ALJ thoroughly reviewed the medical evidence that pre-dated the prior ALJ's September 2017 decision and found that Dr. Quraishi's treatment notes disclosed few abnormal objective findings and a conservative treatment plan. (Tr. 29-30). In August 2017, Dr. Quraishi's physical findings disclosed only "minor musculoskeletal issues" of the left hand, no neurological deficits, and normal ambulation. (Tr. 33-34, citing Tr. 810). The ALJ found that after September 2017, Dr. Quraishi's treatment notes continued to reflect largely normal physical findings and objective results and no neurologic abnormalities. (Tr. 33-34, citing Tr. 879). Dr. Quraishi continued to treat plaintiff conservatively with medication, which the ALJ noted effectively controlled her left hand issues and most of her other symptoms. (Tr. 34, citing Tr. 879-80, 886). Physical examination findings showed some limited range of motion of the left ankle but normal ambulation and no neurologic abnormalities. (Tr. 34, citing Tr. 879).

In addition, the ALJ reasonably determined that Dr. Quraishi's extreme restrictions were inconsistent with the other medical evidence of record, which also consisted of largely normal physical examination findings. (Tr. 33). Records related to physical therapy sessions in 2013 showed that plaintiff's symptoms improved with treatment, and she was discharged with instructions for a home exercise program. (Tr. 30; *see* Tr. 513, 518, 519, 520, 532, 537, 538, 539, 547, 548). Further, the medical evidence related to plaintiff's carpal tunnel syndrome/left hand symptoms did not document disabling restrictions. (Tr. 30-31). The ALJ noted that after her carpal tunnel release in February 2017, plaintiff complained of some ongoing carpal tunnel syndrome and issues, including pain, loss of mobility, and occasional numbness at night. (Tr. 30, 34, citing Tr. 846). However, the treating orthopedist, Dr. John Dobson, M.D., recommended only nonsteroidal anti-inflammatories. (*Id.*, citing Tr. 850). Further, Dr. Dobson's findings were largely unremarkable and showed "somewhat restricted" wrist movement but intact strength, no signs of muscle atrophy, no tenderness, and intact sensation. (Tr. 34, citing Tr. 846, 849). By September 2017, physical examination showed full range of motion of all digits in plaintiff's left hand and intact sensation. (Tr. 31, citing Tr. 845-61). In addition, an EMG study performed in November 2017 due to complaints of neck and shoulder pain disclosed only mild chronic left C5 radiculopathy. (Tr. 34, citing Tr. 866).

This evidence supports the ALJ's finding that Dr. Quraishi's opinion was not entitled to "controlling weight." The ALJ gave "good reasons" for instead giving the opinion "little weight." In addition to the lack of objective medical findings, the ALJ reasonably found that Dr. Quraishi's extreme restrictions were unsupported based on plaintiff's conservative treatment

history; her activities of daily living, which included gardening; and her part-time work activity at the medium exertion level. (*See* Tr. 27, 32, 35). Plaintiff has not cited any evidence to show the ALJ's analysis lacks substantial support.

 Plaintiff's second assignment of error should be overruled.

 **3. The ALJ did not err by failing to consider medical records and opinion evidence**

 Plaintiff alleges that the ALJ erred by failing to consider the medical records and the opinion of consultative examining psychologist Joseph M. Carver, Ph.D., who examined plaintiff on March 14, 2015 (Tr. 634-42), and (2) the March 20, 2018 report of the OOD (Tr. 488-92) based on its test results (Tr. 478-87). (Doc. 13 at PAGEID 4, 6, ¶¶ 7, 9). The Commissioner contends that plaintiff has mischaracterized the OOD report and that Dr. Carver's conclusion as to plaintiff's ability to hold a full-time job was not a medical opinion that the ALJ was required to evaluate.

 As part of his review, the ALJ must consider all medical opinions in the record. *Keeton v. Commr. of Soc. Sec.*, 583 F. App'x 515, 528 (6th Cir. 2014). The opinion of a non-treating medical source is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6). The governing regulations define "medical opinions" as "assertions involving judgments about a patient's 'symptoms, diagnosis and prognosis'." *See Vance v. Commr. of Soc. Sec.*, 260 F. App'x 801, 805 (6th Cir. 2008) (finding statements that the claimant cannot "hold down any type of job or do any type of productive work . . . for the rest of her life" due to "so

much fatigue and muscle pain, joint swelling and tenderness from time to time" and that the claimant "is unable to function in any type of work capacity now or in the foreseeable future" to be "precisely the type of conclusory physician statements that amount to a disability determination, *not* a medical opinion'[;] Such disability determinations are reserved for the Commissioner and therefore are not given 'any special significance.' 20 C.F.R. § 404.1527(e)(1),(3).").

The ALJ did not err by failing to consider the OOD report. Plaintiff has mischaracterized the report. Plaintiff alleges the OOD "refus[ed]" to provide her "services in obtaining even a sedentary job other than in a sheltered environment based on their test results[.]" (Doc. 13 at PAGEID 5, citing Tr. 478-488). The OOD report actually reflects that the OOD informed plaintiff in March 2018 that it was closing her case because she had told OOD that she did "not want to work toward getting a job in the community with others who are not disabled." (Tr. 489). The ALJ did not err by failing to discuss this evidence in his written report. *Baker v. Commr. of Soc. Sec.,* No. 2:19-cv-4323, 2020 WL 2213893, at *6 (S.D. Ohio May 7, 2020) (quoting *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)) (An "ALJ is not required to 'discuss every piece of evidence in the record to substantiate'" her decision.)

Second, plaintiff argues that the ALJ ignored the March 14, 2015 opinion of Dr. Carver (Tr. 634-42), and in particular his conclusion following his evaluation of plaintiff that she did not have "the psychological stamina" needed for full-time employment.[11] (Doc. 13 at PAGEID

---

[11] Plaintiff indicates this was the second time Dr. Carver saw her. According to the report, Dr. Carver had examined plaintiff once before on February 27, 2013. (Tr. 635).

4-5, citing Tr. 642). Dr. Carver completed a Mental Functional Capacity Assessment in which he assessed plaintiff as "Not Significantly Limited" in all areas of mental functioning, with the exception of four areas where he found plaintiff was "Moderately Limited":

- The ability to maintain attention and concentration for extended periods
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
- The ability to interact appropriately with general public
- The ability to accept instructions and respond appropriately to criticism from supervisors

(Tr. 634). Dr. Carver assessed plaintiff as "capable of understanding, remembering, and following instructions"; having no impairment in "[c]oncentration, persistence, and pace" when in "a comfortable environment," but when in "social situations, such as shopping or traveling in the community, [she] is self-conscious and socially anxious"; "[h]er ability to respond appropriately to coworkers and supervisors is not significantly impaired" as shown by her part-time employment over the past 14 years; and her "ability to handle work pressures is mildly impaired." (Tr. 641). Dr. Carver noted that plaintiff told him, "I love my job!" (*Id*.). He opined that plaintiff separated her life into two periods - before the 2011 motor vehicle accident and after - and found that her mental health had improved since February 2013 and her generalized anxiety had subsided. (*Id*.). He found that she still exhibited PTSD symptoms, mild OCD behavior, "episodes of traumatic recollection associated with her accident," and "acute anxiety associated with being self-conscious in public." (Tr. 642). Dr. Carver did not make any abnormal mental status examination findings. (Tr. 638-41). Dr. Carver concluded at the end of his report:

22

> [Plaintiff] is not yet fully recovered from the emotional trauma of the automobile accident and at this time does not have the psychological stamina required for full-time employment. Based on medical opinion, she may not have the medical stamina for full-time employment as well.
>
> The opinions rendered are based upon my review of medical records, applicant history and my psychological evaluation. All opinions are made with a reasonable degree of psychological certainty.

(Tr. 642).

The ALJ did not err by failing to consider Dr. Carver's conclusion that plaintiff's lacks the psychological stamina required to perform full-time work, which does not qualify as a "medical opinion" for Social Security disability purposes. This opinion amounts to a disability determination, which is a decision reserved for the Commissioner. *See Vance*, 260 F. App'x at 805.

However, the ALJ erred when he failed to give any consideration to Dr. Carver's report, which consisted of more than Dr. Carver's conclusion and included an assessment of plaintiff's functional limitations. *See Keeton*, 583 F. App'x at 528 (citing 20 C.F.R. § 404.1527(c)). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Nonetheless, if the ALJ's failure to consider a medical opinion is "harmless error," the Court may affirm the ALJ's decision. *Id.* In this case, the ALJ's failure to discuss Dr. Carver's opinion is harmless

error because it did not prejudice plaintiff "on the merits." *Id.*[12]

Dr. Carver's assessment is not inconsistent with the ALJ's assessment of plaintiff's residual functional capacity. Dr. Carver found only moderate limitations in a few areas of mental functioning. The ALJ's mental RFC findings are either consistent with, or more restrictive than, the moderate limitations Dr. Carver assessed.[13] Thus, the ALJ's failure to consider Dr. Carver's report was harmless. *Rabbers*, 582 F.3d at 651.

Plaintiff's third assignment of error should be overruled.

### 4. The ALJ did not substitute his lay opinion for the medical experts' opinions

Plaintiff claims that the ALJ erred by substituting his own opinion for the opinions of the medical sources. (Doc. 13 at PAGEID 5, ¶ 8). Plaintiff alleges that the "treating source mental opinions are consistent with each other[,] the 2018 O[O]D examiners, and the consultative examination report of [Dr.] Griffiths"; an ALJ cannot "ignore medical evidence or substitute his own views for uncontroverted medical opinion" (*Id.*, quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)); the ALJ is "not qualified to assess [plaintiff's] limitations on the bare medical record" (*Id.*, quoting *Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F.2d 427, 430 (1st Cir. 1991)); and the ALJ here "substituted his own amalgamation of views for that of every

---

[12] Dr. Carver is not a treating source. Therefore, the ALJ was not required to "give good reasons" for accepting or rejecting Dr. Carver's medical opinions under 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), which confer a "substantial procedural right" and therefore a "circumscribed form of harmless error review." *Rabbers*, 582 F.3d at 656.

[13] The ALJ found that plaintiff "is limited to simple, routine tasks in a work environment free of fast production rate or pace work. She can maintain attention and concentration for 2-hour periods and then would need a short 5 to 10 minute break. She can have occasional contact with the public and supervisors, and only occasional and superficial contact with co-workers, with superficial contact defined as no tandem tasks, no arbitration, and no conflict resolution. She is limited to jobs with only occasional changes in the work setting and only occasional decision making." (Tr. 28).

expert who offered one" (*Id.* at PAGEID 5, citing *Lenon v. Apfel*, 191 F. Supp. 2d 968, 978 (W.D. Tenn. 2001)).

Plaintiff has waived this assignment of error.  The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived."  *Kuhn v. Washtenaw County,* 709 F.3d 612, 624 (6th Cir. 2013) (citing *Caudill v. Hollan,* 431 F.3d 900, 915 n. 13 (6th Cir. 2005) (citing decisions that stand for these two related propositions)).  *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").  Plaintiff has not developed this argument by pointing to evidence in the record that shows the ALJ did not rely on any medical opinion evidence and instead formulated his own opinion of plaintiff's functional limitations based on "bare medical findings."  Plaintiff has therefore waived this assignment of error.

Even if plaintiff had not waived this assignment of error, her argument that the ALJ improperly substituted his assessment of the medical evidence for the opinions of the medical experts would fail.  Plaintiff's argument "essentially is that the ALJ erred in his determination of [plaintiff's] residual functional capacity because the residual functional capacity assessment is the duty of [the medical experts]," not the ALJ.  *See Ford*, 114 F. App'x at 198.  This is not accurate.  The regulations "expressly reserve[]" the RFC determination for the Commissioner.  *Id.*; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); 20 C.F.R. § 404.1546(c), 416.946(c).  Such a

determination is part of the disability evaluation. 20 C.F.R. §§ 404.1546, 416.946. *See also*

*Coldiron*, 391 F. App'x at 439 ("An ALJ does not improperly assume the role of a medical

expert by weighing the medical and non-medical evidence before rendering an RFC finding.")

(citing *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009)). Plaintiff has not

shown that the ALJ improperly assessed plaintiff's RFC by substituting his own interpretation of

the medical evidence for the medical opinions of record.

Plaintiff's fourth assignment of error should be overruled.

### 5. The ALJ did not err in evaluating plaintiff's subjective complaints

Plaintiff alleges that the ALJ erred in evaluating her subjective complaints under 20

C.F.R. §§ 404.1529, 416.929 and SSR 96-7p. (Doc. 13 at PAGEID 7-8, ¶ 10). Plaintiff alleges

that the ALJ found plaintiff's "testimony to be disabling."[14] (Doc. 13 at PAGEID 7, citing Tr.

75). Plaintiff contends that the ALJ erred because there "are medical signs and laboratory

findings demonstrating the existence of a medically determinable physical or mental

impairment(s) that could reasonably be expected to produce the pain or other symptoms";

therefore, the ALJ had a duty to "obtain any available objective medical evidence concerning

the intensity and persistence of the pain or other symptoms" and to consider that evidence in

evaluating plaintiff's statements. (*Id.*). Plaintiff contends the ALJ's analysis is flawed because

there was "no expert analysis of the medical evidence upon which [plaintiff's] testimony was

based," and she notes as an example the ALJ's failure to find her "migraine and chronic

headaches" diagnosed by her primary care physician in October 2017 and recorded in a headache

---

[14] The meaning of this reference is not clear, but plaintiff appears to be referring to a statement the ALJ made when summarizing plaintiff's testimony at the September 2018 hearing. (Tr. 35). The ALJ noted that plaintiff testified "she is unable to work. . . ." (Tr. 35).

log to be a severe condition. (*Id*. at PAGEID 7-8, citing Tr. 892, 765-794). Plaintiff also notes

that Dr. Griffiths found no major inconsistencies in the information she provided during her 2015

examination, he found she reported no "bizarre or unusual symptoms," and her self-report data

appeared to be reliable. (*Id*. at PAGEID 8, citing Tr. 667).

The SSA rescinded SSR 96-7p and replaced it with SSR 16-3p, which is applicable to

agency decisions issued on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25,

2017). SSR 16-3p therefore applies to the ALJ's decision here, which was issued on November

26, 2018. SSR 16-3p eliminates "the use of the term 'credibility'" from the SSA's sub-

regulatory policy and clarifies that "subjective symptom evaluation is not an examination of an

individual's character." *Id*. Under SSR 16-3p, "an ALJ must focus on the consistency of an

individual's statements about the intensity, persistence and limiting effects of symptoms, rather

than credibility." *Rhinebolt v. Commr. of Soc. Sec*., No. 2:17-cv-369, 2017 WL 5712564, at *8

(S.D. Ohio Nov. 28, 2017), *reported and recommendation adopted*, 2018 WL 494523 (S.D. Ohio

Jan. 22, 2018).

The regulations and SSR 16-3p describe a two-part process for evaluating an individual's

statements about symptoms, including pain. First, the ALJ must determine whether a claimant

has a medically determinable physical or mental impairment that can reasonably be expected to

produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and

functional limitations of those symptoms by considering objective medical evidence and other

evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of

pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage,

effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5)

treatment, other than medication, received for relief of pain or other symptoms; (6) any measures

used to relieve pain or other symptoms; and (7) other factors concerning functional limitations

and restrictions due to pain or other symptoms. 20 C.F.R. §§ 405.1529(c), 416.929(c); SSR 16-

3p, 2017 WL 5180304, at *3-8. The ALJ's assessment of a claimant's subjective complaints and

limitations must be supported by substantial evidence and based on a consideration of the entire

record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of this

decision "must be sufficiently specific to make clear to the individual and to any subsequent

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that

weight." *Id.* at 248.

The ALJ properly evaluated plaintiff's subjective complaints in accordance with 20

C.F.R. §§ 404.1529(c), 416.929(c) and SSR 16-3p. The ALJ determined that plaintiff had

medically determinable physical and mental impairments that could reasonably be expected to

cause her alleged symptoms. (Tr. 28). However, the ALJ found that plaintiff's statements as to

the intensity, persistence, and limiting effects of those symptoms were not entirely consistent

with the medical evidence and other evidence in the record. In making his determination, the

ALJ thoroughly evaluated and relied on: (1) the lack of supporting objective medical evidence;

(2) the conservative treatment plaintiff had received; (3) plaintiff's limited specialized mental

health treatment history; (4) plaintiff's work history during the period of alleged disability; (7)

plaintiff's daily activities; and (8) plaintiff's subjective complaints to her treating physicians.

(Tr. 28-39). These factors substantially support the ALJ's finding that plaintiff's allegations

regarding her symptoms were not entirely consistent with the medical and other evidence of record.

Plaintiff contends the ALJ's evaluation of her subjective complaints is flawed because there was "no expert analysis of the medical evidence upon which [plaintiff's] testimony was based." (Doc. 13 at PAGEID 8). This is not accurate. The record includes numerous opinions of plaintiff's mental and physical functioning by plaintiff's treating providers, consultative examining sources, and non-examining state agency physicians and psychologists. The ALJ thoroughly reviewed the objective medical evidence and weighed the medical opinions of record when evaluating plaintiff's subjective complaints.[15] (Tr. 37-39). The ALJ reasonably found that the objective medical evidence did not support plaintiff's allegations of disabling physical and mental health symptoms. (Tr. 36). The ALJ did not err by evaluating plaintiff's subjective complaints based on the objective medical evidence and the medical opinions of record.

Plaintiff also alleges the ALJ erred by failing to take her "migraine and chronic headaches" into account when evaluating her subjective complaints.[16] (*Id*. at PAGEID 7-8). The ALJ found that plaintiff's headaches "have remained largely asymptomatic and/or responded well to conservative treatment." (Tr. 24). Plaintiff claims that Dr. Quraishi had diagnosed her with "migraine and chronic headaches" on October 23, 2017 (Tr. 892), and a headache log she kept for one month indicates her migraines occurred with "disabling

---

[15] The ALJ's failure to evaluate Dr. Carver's opinion is discussed *supra*.

[16] Plaintiff testified at the ALJ hearing that she sometimes wakes up with a headache that causes her to feel sick to her stomach and "hurt so bad [she] can't even read or look at anything." (Tr. 62). Plaintiff testified that she had been given medicine for the headaches, but it did not help and she had to sleep in a quiet room and keep her eyes closed to get relief. (Tr. 62-63).

frequency" (Tr. 794-812). The records plaintiff cites show that she was diagnosed with "headache" and she recorded 14 headaches during March 29-April 29, 2017. These records do not indicate the severity of plaintiff's headaches and whether medication helped to alleviate the symptoms. Plaintiff has not cited any additional evidence to show that the ALJ erred in evaluating her subjective complaints about her headaches. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [an impairment], of course, says nothing about the severity of the condition.").

Finally, plaintiff notes that Dr. Griffiths found no major inconsistencies in the information she provided during her 2015 examination, and he found that her self-report data appeared to be reliable. (*Id*. at PAGEID 8, citing Tr. 667). Dr. Griffiths' assessment of the consistency of plaintiff's statements for purposes of his examination is not relevant to the issue of whether the ALJ complied with the Social Security rules and regulations. The Court's focus here is on whether the ALJ's evaluation of the consistency between plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms and the objective medical and other evidence is supported by substantial evidence and is based on a consideration of the entire record. The ALJ thoroughly considered the evidence of record and evaluated plaintiff's subjective complaints in accordance with 20 C.F.R. §§ 404.1529(c), 416.929(c) and SSR 16-3p. Plaintiff has shown no error in this regard.

Plaintiff's fifth assignment of error should be overruled.

**6. The ALJ did not erroneously rely on the VE's testimony**

Plaintiff argues that the ALJ erred by relying on VE testimony that did not accurately portray plaintiff's physical and mental impairments to find that plaintiff could perform a significant number of jobs in the national economy. (Doc. 13 at PAGEID 8, ¶ 11).

A VE's testimony on the availability of jobs in the relevant economy may constitute substantial evidence "where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 290 (6th Cir. 2014) (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)). The ALJ only need incorporate those limitations that he has found to be supported by the evidence. *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 494 (6th Cir. 2016). The ALJ "can present a hypothetical to the [VE] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Here, plaintiff asserts that the testimony of the VE does not satisfy the Commissioner's burden at Step Five because the hypothetical that the ALJ posed to the VE did not accurately reflect plaintiff's physical and mental limitations. (Doc. 13 at PAGEID 8). Plaintiff alleges she has the following limitations that are work preclusive and were not included in the hypothetical that the ALJ relied on to find she can perform a significant number of jobs in the national economy: plaintiff is unable to "use both hands half the time" (Tr. 73); "her ability to recognize and correct a mistake is off task 10% of the time" (Tr. 74-75); she has "limitations in dealing with conflict or ignoring distractions 10% to 15% of the workday"; and she cannot count change (Tr. 76-77). Plaintiff has not cited any evidence in the record that supports these limitations and

31

shows that the ALJ was required to include them in the hypothetical to the VE. Absent any such evidence, the ALJ did not err by failing to include the limitations noted by plaintiff in his hypothetical.

Plaintiff's sixth assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this case be **CLOSED** on the docket of the Court.

Date:  2/17/2021

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CYNTHIA DAWN JACKSON,               Case No. 1:19-cv-917
       Plaintiff,                          Dlott, J.
                                       Litkovitz, M.J.

       vs.

COMMISSIONER OF
SOCIAL SECURITY,
       Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).